UNITED STATES DISTRICT COURT
FOR DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUDITH PRINZO, on behalf of herself and all other employees similarly situated,<br><br>    Plaintiff,<br><br>        v.<br><br>HANNAFORD BROS. CO., LLC,<br><br>    Defendant. | CIVIL ACTION NO. 1:22-cv-10672 |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT'S MOTION TO DISMISS</u>**

This is the second lawsuit filed by Plaintiff asserting overtime claims against Hannaford. In her first lawsuit, originally filed in state court and currently pending before this Court as Case No. 1:21-cv-11901-WGY, Plaintiff claims that she was misclassified as "exempt" from Massachusetts' overtime requirements and asserts overtime claims under Massachusetts law on behalf of herself and a Rule 23 class of "department managers" who worked for Hannaford in Massachusetts from April 28, 2018 to present. As this Court knows, Plaintiff has spent the better part of the last year trying keep the first lawsuit out of federal court, including filing two separate Motions to Remand. But this Court ultimately correctly concluded that it had subject matter jurisdiction over the state law claims in the first lawsuit.

Now, in this second lawsuit, Plaintiff asserts an overtime claim under the Fair Labor Standards Act ("FLSA") against Hannaford, and she purports to bring this federal claim on behalf of herself and a nationwide class of Hannaford's "fresh department managers." This second lawsuit arises from the same nucleus of operative facts as her first lawsuit because it challenges the very same pay practice, advances the very same misclassification theory, and largely seeks the

very same remedies as the first lawsuit.  However, instead of moving to amend her complaint in

the first lawsuit and explaining to the Court why she waited over a year to bring an FLSA claim,

Plaintiff chose to file an entirely new lawsuit with the hope that she could avoid a contested motion

to amend and escape this Court's inevitable scrutiny.  Despite Plaintiff's procedural maneuvering,

Plaintiff's new lawsuit is the epitome of improper claim splitting and should be dismissed.

Plaintiff has not even tried to disguise her motives and instead admits that she filed this

second lawsuit in order to avoid "the delay and uncertainty of filing a contested motion to amend"

in her first lawsuit.  *See* Exhibit A.  Though Hannaford will certainly oppose any attempt by

Plaintiff to amend her complaint in the first lawsuit due to Plaintiff's unexplained delay in seeking

to bring an FLSA claim, Plaintiff cannot avoid Hannaford's opposition or an adverse ruling on that

motion to amend by filing an entirely new lawsuit.

The time for Plaintiff to bring her FLSA claim has come and gone.  Plaintiff purposefully

chose not to bring an FLSA claim in her first lawsuit for strategic reasons—prioritizing her desire

to try to keep her first lawsuit in state court over bringing a federal claim that would have

unquestionably landed her first lawsuit in this Court.  Plaintiff should be forced to deal with the

consequences of that strategic decision and should not be permitted to unilaterally subject

Hannaford to successive lawsuits simply because she lost the removal fight in the first lawsuit.

Plaintiff's second lawsuit should be dismissed with prejudice.

## I.      PROCEDURAL AND FACTUAL BACKGROUND

### A. **Plaintiff's First Lawsuit Against Hannaford.**

On April 28, 2021, Plaintiff filed a class action complaint against Hannaford in Plymouth

County Superior Court on behalf of herself and a purported class of current and former

"department managers" in Massachusetts (the "First Lawsuit").  *See Prinzo v. Hannaford Bros.*

*Co., LLC*, Civil Action No. 1:21-cv-11901-WGY (Hannaford's Notice of Removal [ECF No. 1] at Ex. A at ¶ 3).  In her First Lawsuit, Plaintiff alleges that Hannaford improperly classified its Massachusetts-based department managers as "exempt" under the Massachusetts Wage Act ("MWA"), and she seeks allegedly unpaid overtime and Sunday and holiday premium pay for herself and the purported class.  *Id.* at ¶¶ 48, 52, 57.

Plaintiff has spent the last year contesting this Court's subject matter jurisdiction over the First Lawsuit—at great expense and delay to both Hannaford and the Court.  As this Court is already familiar, Hannaford initially removed Plaintiff's First Lawsuit to this Court on June 9, 2021.  *See* Civil Action No. 1:21-cv-10968-WGY.  On July 9, 2021, Plaintiff moved to remand the case back to state court, arguing that the allegations in the complaint did not provide a sufficient basis to conclude that her claims satisfied the amount in controversy requirements under either § 1332(a) or CAFA.  *See* Civil Action No. 1:21-cv-10968 (ECF No. 17, 30).  Though Hannaford provided evidence that Plaintiff's class claims exceeded the jurisdictional minimums under one damages model and would soon exceed the minimums under a different damages model, Plaintiff refused to take a position on which damages model applied in the case and, therefore, claimed that damages were too speculative to support removal at that time.  Though the Court granted Plaintiff's first Motion to Remand, the Court stated on the record that, "should it become clearer that this Court has jurisdiction, the Court will not hesitate to exercise its subject matter jurisdiction." *Id*. (ECF No. 33 at 14:11-13).

On November 23, 2021, Hannaford removed Plaintiff's First Lawsuit for a second time based on the accrual of additional damages on Plaintiff's class action claims and based on certain admissions Plaintiff made during her deposition regarding the average numbers of hours that she claims to have worked each week during her employment with Hannaford.  *See* Civil Action No.

1:21-cv-11901-WGY (ECF No. 1).  Undeterred, Plaintiff filed a second Motion to Remand on December 20, 2021, arguing that her own damages were somehow not typical of the class she was supposedly representing, and she even went as far as to try to amend her class definition in order to avoid this Court's jurisdiction. *See id.* at ECF No. 18.  Neither strategy worked, and following yet another hearing on the matter, the Court denied Plaintiff's Motion to Remand on March 29, 2022. *See id.* at ECF No. 23.

In total, the parties engaged in eight rounds of briefing (inclusive of sur-replies) and two hearings over the course of a 10-month period—all focused on Plaintiff's attempts to avoid federal court jurisdiction.  Had Plaintiff timely filed her FLSA claim when she filed the First Lawsuit, all of this effort would have been avoided.

In any event, after the Court denied the Plaintiff's second Motion to Remand in the First Lawsuit, the parties developed a detailed trial and discovery schedule based on the state law claims asserted in the Complaint and the assumption that Plaintiff's case would proceed as a putative Rule 23 class action.  On April 12, 2022, the parties submitted a Joint Proposed Case Management Schedule, which the Court subsequently endorsed. *See* Civil Action No. 1:21-cv-11901-WGY [ECF Nos. 24, 25].  Under the parties' Joint Case Management Schedule, the parties are engaged in a two-phased discovery process where, during the first phase, the parties have been focused on Plaintiff's individual claims and Rule 23 class certification-related issues. *See id.* at ECF. No. 24.  At the conclusion of the first phase of discovery, Plaintiff intends to move for Rule 23 class certification. *See id.*  If the Court grants Plaintiff's motion for Rule 23 class certification, in whole or in part, the parties plan to then engage in the second phase of discovery focused on the claims of, and alleged damages related to, the certified class, followed by dispositive motions and a trial. *See id.*  The first phase of discovery closes in less than six weeks on July 15, 2022, and Plaintiff's

motion for Rule 23 class certification, if any, must be filed by July 29, 2022. *See id.* The deadline to complete the second phase of discovery is February 15, 2023, and trial is scheduled to begin on April 3, 2023. *See id.*

The parties have been actively litigating Plaintiff's claims in the First Lawsuit for almost a year, and Hannaford served its initial discovery requests on Plaintiff on August 12, 2021. To date, the parties have exchanged written discovery, and Hannaford has produced thousands of responsive documents. The parties have also deposed Plaintiff and five Hannaford representatives. Plaintiff is currently scheduled to depose three additional Hannaford representatives on June 14 and 15, 2022.

## B. Plaintiff Requested Hannaford's Consent to File An Amended Complaint.

On April 25, 2022, less than a month after the Court denied Plaintiff's second Motion to Remand making clear that the First Lawsuit would remain in this Court, Plaintiff's counsel notified Hannaford's counsel that Plaintiff intended to file an amended complaint in the First Lawsuit and asked for Hannaford's position on the proposed amendment, writing in an e-mail:

> We intend to amend the complaint to clarify that our proposed class includes only so-called 'fresh' departments *and, since we're now in federal court, to add an FLSA claim as to all such department managers, both in MA and other states*. Can you let us know your client's position – i.e., whether it will assent, not oppose, or oppose (and, if so, as to which issues) – so we can prepare the necessary paperwork? Thanks.

Exhibit B (emphasis added). Hannaford's counsel responded on April 27, 2022, stating that Hannaford intended to oppose Plaintiff's efforts to amend her complaint. *See id.*

The parties engaged in a telephone conference on April 29, 2022 at Plaintiff's request. During the parties' meet and confer, Hannaford's counsel further explained that Hannaford would oppose a motion to amend due to Plaintiff's strategic delay in pursing the FLSA claim and the

disruption that such an amendment would cause at this stage of the case, particularly considering the looming class certification and other deadlines.

Plaintiff never filed a motion to amend in the First Lawsuit. Instead, on May 4, 2022, Plaintiff's counsel sent an e-mail forwarding Plaintiff's new Complaint, stating: "Just a courtesy heads-up that we filed an FLSA case today – see below – in lieu of the delay and uncertainty of filing a contested motion to amend." *See* Exhibit A.

**C.  Plaintiff's Second Lawsuit Against Hannaford.**

Plaintiff's new Complaint contains a single count under the FLSA for allegedly unpaid overtime. *See* Compl. ¶ 1 (the "Second Lawsuit"). Identical to the allegations in the First Lawsuit, Plaintiff alleges in the Second Lawsuit that her department manager position was misclassified as "exempt" and that she is, therefore, entitled to overtime compensation for all hours the she worked over 40 in a given workweek, including liquidated damages and attorneys' fees. *See* Compl. ¶¶ 1, 13. Even a cursory review of the new Complaint shows that Plaintiff is pursuing the same misclassification theory based on the same allegations and underlying facts. *See* Compl. ¶¶ 7-10.

The only material difference between Plaintiff's two lawsuits is the class that Plaintiff seeks to represent. In her Second Lawsuit, Plaintiff purports to represent a nationwide collective of all current and former "fresh department managers" at all of Hannaford's U.S. locations pursuant to 29 U.S.C. § 216(b). *See* Compl. ¶ 17. This class definition is inclusive of the same putative class members that Plaintiff purports to represent in the First Lawsuit. *See* Compl. ¶ 7.

## II.  STANDARD OF REVIEW

A motion to dismiss challenges the legal sufficiency of the complaint. *See Szewczyl v. Maxon Precision Motors, Inc.*, 470 F. Supp. 3d 59, 60 (D. Mass. 2020). Relevant here, the Court may properly analyze and apply the rule against claim splitting on a motion to dismiss and may

take judicial notice of a plaintiff's previously filed and pending lawsuits.  *See Salvati v. Fireman's Fund Insurance Co.*, 368 F. Supp. 3d 85, 91 (D. Mass. 2019) (deciding issue on motion to dismiss); *see also Conservation Law Foundation, Inc. v. Longwood Ventures & Destinations, Inc.,* 415 F. Supp. 3d 240, 242 (D. Mass. 2019) (same).

## III.   ARGUMENT

### A.  The Rule Against Claim Splitting Prohibits A Plaintiff From Filing Two Separate Actions Against The Same Defendant Involving The Same Subject Matter.

The rule against claim splitting "prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." *Fernandes v. Quarry Hill Associates, L.P.*, 09–11912–JGD, 2010 WL 5439785, at *10 (D. Mass. Dec. 28, 2010); *see also Salvati v. Fireman's Fund Insurance Co.*, 368 F. Supp. 3d 85, 91 (D. Mass. 2019) ("[P]arties are not permitted to engage in claim-splitting: that is, parties are generally not permitted to bring new actions based on claims that could have been asserted in the earlier action, but were not.").  Stated differently, "[p]laintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant."  *Almaznai v. S-L Distribution Co., LLC*, 20-cv-08487-JST, 2021 WL 4457025, at *5 (N.D. Cal. June 21, 2021).

The "idea [of the rule against claim splitting] is to prevent the same plaintiff from filing multiple suits alleging the same claims against the same defendant when one suit will do." *Beckerley v. Alorica, Inc.*, 14–0836–DOC, 2014 WL 4670229, at *4 (C.D. Cal. Sept. 17, 2014). To that end, "a litigant with multiple related claims must not separate, or split, the claims into multiple, successive cases, but must include in the first action all of the claims that fall within the Court's jurisdiction." *Laccinole v. Diversified Consultants, Inc.*, 1:19-CV-00149, 2020 WL 1862969, at *2 (D.R.I. Apr. 14, 2020).  Put simply, "[i]t is impermissible claim splitting to allow

a plaintiff to bring state law claims in one suit and then file a second suit with federal causes of action." *Downie BF Weston, LLC*, 16-81396-CIV, 2016 WL 7451427 at *3 (S.D. Fla. Dec. 23, 2016).

The purpose of the rule is to "requir[e] a plaintiff to address all related claims in one action and protect the defendant from the necessity of litigating similar claims in separate actions." *Fernandes*, 2010 WL 5439785, at *10. As such, the rule "serves to conserve judicial resources, prevent inconsistent decisions and encourage reliance on judicial decisions." *Id.*; *see also Laccinole*, 2020 WL 1862969, at *2 ("The [rule] is meant to foster judicial economy and the comprehensive disposition of litigation . . . . The doctrine of claim splitting is also meant to protect parties from the vexation of concurrent litigation over the same subject matter.").

A later-filed action "is generally found duplicative of an earlier-filed suit if the claims, parties, and available relief do not significantly differ between the two actions." *Conservation Law Foundation, Inc. v. Longwood Ventures & Destinations, Inc.,* 415 F. Supp. 3d 240, 242 (D. Mass. 2019). As this Court has explained:

> If a claim is both transactionally related to one which is the subject of a pending lawsuit and was in existence at the time the first lawsuit was filed, then, for all the same policy reasons that underlie the doctrine of claim preclusion, it is incumbent on the plaintiff either to 1) include the second claim in the original complaint, or 2) bring the second claim into the first action by a motion to amend filed early enough to be allowed without undue disruption of the existing case.

*Fernandes*, 2010 WL 5439785, at *10. When assessing whether the rule applies, "[t]he essential inquiry is whether the causes of action arise out of a common nucleus of operative facts." *Laccinole*, 2020 WL 1862969, at *2; *Perry v. Alexander*, 2:15-cv-00310-JCN, 2017 WL 3084387, at *3 (D. Me. July 19, 2017) (noting that the test "is whether the first suit, assuming it were final, would preclude the second suit").

8

**B.  Plaintiff's Second Lawsuit Violates The Rule Against Claim Splitting.**

Plaintiff's First and Second Lawsuits are the textbook definition of claim splitting.  Not only is Plaintiff the only named Plaintiff in both actions, but it is apparent from the face of the Complaint in the Second Lawsuit that both of her lawsuits arise out of the same set of operative facts and are "transactionally related" to one another.  *Fernandes*, 2010 WL 5439785, at *10.  Both lawsuits challenge the same pay practice (i.e., the classification of department managers as exempt from overtime requirements), advance the same misclassification theory, and even seek the same remedies.  For all practical purposes, Plaintiff's claims are virtually and factually identical in both lawsuits, and there is no dispute that Plaintiff could have included her FLSA claim in her original complaint in her First Lawsuit.

This Court has enforced the rule against claim splitting in similar circumstances.   In *Fernandes*, for example, this Court dismissed the plaintiffs' later-filed FLSA action where the plaintiffs failed to include their FLSA claims in their original lawsuit asserting state law claims.  *Fernandes*, 2010 WL 5439785, at *10.  In that case, the plaintiffs originally filed a state court action alleging off-the-clock and unpaid overtime claims under the MWA.  However, after the state court denied the plaintiffs' motion to amend to add an FLSA claim, the plaintiffs filed a single count complaint in federal court under the FLSA.  In dismissing the plaintiff's federal complaint, this Court held that:

> [T]he plaintiffs' FLSA claims are transactionally related to their [MWA] claims in the State Court Action. Therefore, those claims should have been included in their state court complaint or brought in via a timely motion to amend . . . Under the rule against claim splitting, they cannot avoid their own delay in moving to amend their complaint by maintaining their FLSA claims here.

*Id*.  In doing so, the Court had no trouble finding that the plaintiffs' MWA and FLSA claims were "transactionally related"—concluding that both claims "[arose] from a common nucleus of

operative fact . . . out of the plaintiffs' employment relationship with the defendants and their assertion that they were not paid for all of the time they worked." *Id*.

Other courts have reached the same conclusion; indeed, as one court recently put it: allowing "the same plaintiff-employee [to] split his FLSA and state-law [wage and hour] claims across two actions in federal court" is "precisely what the doctrine against claim-splitting is meant to prohibit." *Almazani*, 2021 WL 4457025, at *7; *see also Sparks v. Children's Place*, 17-1057, 2017 WL 4765651, at *2-3 (E.D. Pa. Oct. 20, 2017) (dismissing later-filed state law wage and hour class action premised on the same alleged violations as an already-pending FLSA action); *Khan v. H&R Block Eastern Enterprises, Inc.*, 11–20335–Civ, 2011 WL 3269440, at *7 (M.D. Fla. July 29, 2011) (holding that a minimum wage claim and an overtime claim wage arose from the same "transaction"—i.e., the employer-defendant's alleged failure to pay wages); *Jensen v. Secorp Industries*, 2:19-CV-07980, 2019 WL 8064603, at *3 (C.D. Cal. Dec. 9, 2019) (holding that "FLSA claims share a common nucleus of fact with other employment-related claims"); *Downie*, 2016 WL 745142, at *3 (holding that an unpaid bonus claim and unpaid overtime claim arose out of the same transaction of "work related compensation").

The fact that Plaintiff seeks to represent different classes of department managers in her two lawsuits does not change the applicability of the rule against claim splitting. Rather, courts have made clear that the relevant inquiry under the rule against claim splitting focuses on whether the named plaintiff is a plaintiff in both lawsuits—not whether the classes perfectly overlap. *See Sparks*, 2017 WL 4765651, at *2-3 ("[T]he fact that other potential class members are not splitting their claims, however, does not change the fact that the Named Plaintiffs are."). Courts routinely dismiss later-filed wage and hour class and collective actions where—like here—the named plaintiff is a plaintiff in both lawsuits, regardless of whether the named plaintiffs seek to represent

different classes. *See, e.g.*, *Almaznai*, 2021 WL 4457025, at *4-6 (dismissing later filed wage and hour class action where the named plaintiff in the second action had already opted into a pending FLSA collective action); *Sparks*, 2017 WL 4765651, at *2-3 (same); *Jensen*, 2019 WL 8064603, at *2-3 (dismissing FLSA collective action where the same named plaintiff had already filed state law wage and hour class action); *Greene v. H&R Block Eastern Enterprises, Inc.*, 727 F. Supp. 3d 1363, 1366 (S.D. Fla. 2010) (reaching the same conclusion where the named plaintiffs in the later filed action had already opted into a pending FLSA collective action).

To be clear, Plaintiff did not unknowingly stumble into a procedural trap.  Plaintiff admits that she filed this Second Lawsuit for the sole purpose of avoiding the "uncertainty of filing a contested motion to amend" in the First Lawsuit.  *See* Exhibit A.  Far from a valid reason, Plaintiff's procedural maneuvering typifies why the rule against claim splitting exists in the first place. *See Leonard v. Stemtech Int'l, Inc.*, 12–86–LPS–CJB, 2012 WL 3655512, at *8 (D. Del. Aug. 24, 2012) (noting that the rule against claim splitting is designed, in part, "to prevent plaintiffs from circumventing [] court orders" after losing a motion to amend).  The fact that Hannaford intended to oppose Plaintiff's efforts to amend her complaint in the First Lawsuit is no excuse and certainly does not permit Plaintiff to violate the rule against claim splitting and file an entirely new lawsuit. *See, e.g.*, *Fernandes*, 2010 WL 5439785, at *10 ("Under the rule against claim splitting, [plaintiffs] cannot avoid their own delay in moving to amend their complaint by maintaining their FLSA claims here.").

In sum, if Plaintiff wanted to bring an FLSA claim, Plaintiff had two options: "1) include the [FLSA] claim in the original complaint, or 2) bring the [FLSA] claim into the first action by a motion to amend filed early enough to be allowed without undue disruption of the existing case."

*Fernandes*, 2010 WL 5439785, at *10.  Plaintiff did neither, and the Court should dismiss the Second Lawsuit.

**C.  <u>Consolidating The Two Lawsuits Or Allowing Plaintiff To Add A FLSA Claim In The First Lawsuit Is Not Appropriate.</u>**

Faced with the reality that her Second Lawsuit is clearly barred by the rule against claim splitting, Plaintiff may argue, in the alternative, that the First Lawsuit and the Second Lawsuit should simply be consolidated or that the Court should permit her to amend her complaint in the First Lawsuit.  Neither outcome is appropriate.

As an initial matter, Plaintiff cannot justify her 13-month delay in pursuing her FLSA claim.  There is no dispute that Plaintiff knew everything she needed to know to bring an FLSA claim from the start and that she could have included an FLSA claim in her original complaint in her First Lawsuit.   Plaintiff, instead, purposefully chose to forego an FLSA claim for the sole purpose of avoiding federal court jurisdiction, and she is only seeking to add an FLSA claim at this time because she lost that fight—a fight that came at great cost and delay to both Hannaford and the Court and one that could have been avoided entirely if Plaintiff had pled an FLSA claim from the start.  Needless to say, Plaintiff's desire to remain in state court does not excuse her undue delay or provide a compelling reason to subject Hannaford (or the Court) to the procedural morass that would result if Plaintiff is permitted to forge ahead with her FLSA claim after all these months.  Indeed, as the First Circuit has recognized, Plaintiff's unexplained delay is reason enough to prevent Plaintiff from moving forward with her FLSA claim.  *See Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 61 (1st Cir. 2018) (holding that an "undue delay in moving to amend, even standing alone, can provide a court with adequate grounds to deny leave to amend," especially where the plaintiff engaged in a "wait and see approach").

There would be real consequences if Plaintiff is allowed to proceed with her FLSA claim, and a collective action claim under 29 U.S.C. § 216(b) would significantly alter the size and trajectory of Plaintiff's First Lawsuit.  For starters, a nationwide collective action claim would dramatically expand the size of the case from approximately 150 department managers in Hannaford's 16 stores in Massachusetts (and fewer department managers if Plaintiff only moves to certify a class of "fresh" department managers as she has suggested she will do) to over 800 current and former "fresh" department managers at Hannaford's 180-plus Hannaford stores spread across 5 different states.

However, this is about more than just the number of possible plaintiffs and the number of stores and states.  A FLSA collective action under § 216(b) "is a fundamentally different creature than [a] Rule 23 class action."  *Johnson v. VCH Holding Corp.*, 802 F. Supp. 2d 227, 233 (D. Me. 2011).  In a collective action, putative plaintiffs must affirmatively opt into the case, and the Court would need to account for and oversee a lengthy notice and opt-in period.  *See Roy v. FedEx Ground Package System, Inc.*, 353 F. Supp. 3d 43, 59 (D. Mass. Nov. 18, 2018) ("Unlike [Rule] 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt in and be bound by any judgment.").

The class certification process is also fundamentally different. The certification process under § 216(b) occurs in two distinct phases—conditional certification and final certification—and the "similarly situated" standard under § 216(b) is legally and factually different from the class certification factors set forth in Rule 23.  *See Dyse v. HealthAll Consulting*, 433 F. Supp. 3d 35, 38 (D. Mass. 2020) (explaining two-step certification process); *Johnson*, 802 F. Supp. 3d at 233 ("It is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil

Procedure."). Moreover, if a FLSA collective class is certified, every individual that opts in to the action would become "party plaintiffs" with "full party status" and would be subject to same discovery as Plaintiff. *Waters v. Day & Zimmerman NPS, Inc.*, 23 F.4th 84, 90 (1st Cir. 2022); *see also Campbell v. City of Los Angeles*, 903 F.3d 1090, 1104 (9th Cir. 2018) (noting that "[t]he FLSA leaves no doubt that every plaintiff who opts in to a collective action has party status" and that "the result of joining the collective is the same status in relation to the claims of the lawsuit as [that held by] the [original] named plaintiffs").

All of these differences will add procedural complexity and delay in the litigation of Plaintiff's overtime claims. The parties would, at a minimum, need to revise the Case Management Schedule to provide for a full notice and opt-in period; a protracted, two-phased conditional and final certification process, including the time to seek additional discovery from Plaintiff as to her claim that she is "similarly situated" to the putative collective action members; and an expanded discovery period to allow Hannaford to seek discovery from each opt-in plaintiff. These revisions to the Case Management Schedule will significantly delay resolution of the case, and the case will certainly not be ready for trial by April 3, 2023, as currently scheduled.

Given these concerns, Judge Robertson recently denied a motion to amend in similar circumstances. *See Roy v. FedEx Ground Package Systems, Inc.*, 3:17-cv-30116-KAR, 2021 WL 1565509, at *2-3 (D. Mass. Apr. 21, 2021). In that case, Judge Robertson held that allowing the plaintiff to amend the complaint to add MWA claims to an existing FLSA collective action would "complicate and delay resolution of [the] case" and "prejudice the defendants in terms of case preparation, planning, and efficiently allocating and managing its resources and dealing with the inevitable delays caused by allowing the amendment." *Id.* Judge Robertson found that these disruptions were amplified by the plaintiffs' "unexcused and significant delay in moving for leave

to amend." *Id*. at *3; *see also Dickerson v. Zayo Group, LLC*, 20-cv-02490, 2021 WL 7368171, at *4 (D. Colo. Sept. 20, 2021) (denying motion to amend complaint to add state law wage and hour claim to existing FLSA collective action, reasoning that "[n]either the Court nor Defendant should bear the burden for Plaintiff's litigation strategy"); *Westbrook v. Advances Solids Control, LLC*, 2:14-cv-131, 2015 WL 4389044, at *3 (S.D. Tex. July 15, 2015) (same, noting that such an amendment would "transform" the nature of the case).

In sum, allowing Plaintiff to pursue an FLSA claim at this juncture—whether in the Second Lawsuit or by amending her claims in the First Lawsuit—would cause significant disruption and would delay the resolution of her First Lawsuit.  The rule against claim splitting is designed to prevent this very thing, and for similar reasons, Plaintiff should not be allowed to amend her complaint in the First Lawsuit or otherwise consolidate the two lawsuits.

## IV.    <u>CONCLUSION</u>

Every decision has a consequence.  Here, Plaintiff decided not to pursue an FLSA claim in the First Lawsuit because she wanted to avoid federal court jurisdiction.  The consequence for that decision is that, having lost her jurisdictional fight, she cannot now pursue an FLSA claim against Hannaford.  If the rule against claim splitting is to have any teeth, the rule must be applied to this textbook example.  Plaintiff's Second Lawsuit should be dismissed with prejudice.

Respectfully submitted,

**HANNAFORD BROS. CO., LLC,**

By its attorneys,

/s/ Christopher M. Pardo
Christopher M. Pardo (BBO# 674674)
 cpardo@HuntonAK.com
Elizabeth L. Sherwood (BBO# 687866)
 esherwood@HuntonAK.com
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, MA 02109
Tel: (617) 648-2800
Fax: (617) 433-5022

Dated: June 9, 2022

## CERTIFICATE OF SERVICE

I, Christopher M. Pardo, hereby certify that I served the foregoing on all counsel of record,

through the Court's CM/ECF e-filing system on June 9, 2022.

/s/ Christopher M. Pardo
Christopher M. Pardo